UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FENG CHEN, DONG CHEN, CHENG LI, and
CHANGXING LI, individually and on behalf of all
others similarly situated,

                              Plaintiffs,

        -against-

KUNJ PATEL, AMGAD ELHOSSIENI, EAST
WINGERS INC. d/b/a/ BEST WINGERS, BEST
WINGERS LLC d/b/a/ BEST WINGERS, B. WINGERS,
INC., d/b/a BEST WINGERS,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/2/2019

16 Civ. 1130 (AT) (SDA)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

Plaintiffs, Feng Chen, Dong Chen, Cheng Li, and Changxing Li, bring this action against

Defendants Kunj Patel and East Wingers Inc. d/b/a Best Wingers (individually "East Wingers"),

and Defaulting Defendants Amgad Elhossieni, Best Wingers LLC d/b/a/ Best Wingers, and B.

Wingers, Inc., d/b/a Best Wingers, their former employers, for violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL")

§§ 190 and 650 *et seq.*  Compl., ECF No. 27.  On September 18–19 and November 6, 2018, the

Court held a bench trial as to Defendants' liability.  *See* 9/18/2018 ECF Entry; ECF Nos. 141,

150.  At trial, Plaintiffs called Feng Chen, Dong Chen, Cheng Li, Changxing Li and Kunj Patel as

witnesses.  Plaintiffs' testimony was received live as well as in the form of sworn declarations.[1]

Plaintiffs, who do not speak English as their primary languages, each testified with the assistance

of an interpreter.  The testimony of Patel was received live.  Post-trial memoranda were fully

submitted on March 7, 2019.  *See* ECF No. 169.

As a general matter, the Court finds the lion's share of Plaintiffs' testimony credible.  This

determination is based on the content of Plaintiffs' testimony and their demeanor at trial.  The

Court finds that any inconsistencies in each Plaintiff's testimony was the result of confusion

_____

[1] Changxing Li is the only Plaintiff who did not submit a sworn declaration.

and/or defense counsel's mischaracterization of a given Plaintiff's testimony during questioning, rather than an attempt to intentionally mislead the Court. *See, e.g.*, Trial Tr. 52:23–54:25, ECF No. 144. By contrast, the Court finds the testimony of Patel less than credible, particularly with respect to Plaintiffs' hours and wages.[2] However, the Court finds Patel's testimony credible with respect to his statements about when he purchased the business.

The Court now issues its findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a). *See* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately.").

I.   Findings of Fact

    A.  Defendants

The corporate Defendant, East Wingers, owns the Best Wingers restaurant located at 711 Second Avenue, Manhattan, New York (the "Restaurant"). Trial Tr. 203:21–204:23. The Restaurant uses supplies and materials that move in interstate commerce and has revenues of over $500,000 per year. Joint Pretrial Order § VII.1.c, ECF No. 127. East Wingers purchased the Restaurant from Defaulting Defendants on July 31, 2015. *Id.* 203:10–11, 204:22–23, 207:4–21. Patel formed East Wingers and is the president and sole shareholder. *Id.* 204:17–19, 205:12–19, 207:23–25.

The Court finds that Patel did not have knowledge of the Defaulting Defendants alleged labor violations at the date of purchase. At that time, Patel's understanding was that East Wingers was purchasing only the assets of the business, not the debts. *Id.* 263:14–19. In other words,

---

[2] Defendants argue that Patel's testimony must be "adopted by and vouched for by plaintiffs" because Plaintiffs called Patel as a witness and did not seek an adverse witness designation. Def. Post-Trial Mem. at 9–11, ECF No. 169. However, as Defendants recognize, this is not the case where, as here, the testimony was contradicted or the Court finds that the testimony was not credible. *See id.* at 11.

"everything was paid," and Defendants did not take on any of Defaulting Defendants' liabilities. *Id.* 263:20–264:11. Nor was Patel aware of any labor issues or problems that could arise based on the manner in which the Restaurant was operated prior to his purchase. *Id.* 264:12–17.

Before the purchase, Patel spent a few weeks at the Restaurant observing Defaulting Defendant Amgad Elhossieni. *Id.* 264:18–19. Patel would visit the Restaurant "in the morning, take a train home and . . . spend as much time as [he could] and then come back." *Id.* 265:1–2. He also went through the payroll records. *Id.* 265:5–7.

Since the date of purchase, Patel has had the authority to make decisions for the Restaurant, including the power to hire and fire employees, supervise and control employment records and work schedules, and determine the rates of employee pay. *Id.* 194:10–21, 196:23–197:4, 198:24–199:8, 202:14–19. Patel spends a few days a week at the Restaurant doing paperwork, ordering, and other administrative work. *Id.* 299:3–16.

B. Duration of Employment

The Court finds that Feng Chen was employed as a deliveryman at the Restaurant from March 3, 2007 to January 20, 2016, although he also had additional responsibilities like preparing celery packages. Trial Tr. 7:25–8:4, 24:22–24; Pl. Ex. 1 ¶ 2, ECF No. 166-1. He generally worked five days per week, from 11:00 a.m. to 11:00 p.m. with a ten to twenty-minute break. Trial Tr. 10:10–18, 11:12–12:25. During football season, from October to February, he worked six days a week. *Id.* 10:19–11:2.

The Court finds that Cheng Li was employed as a deliveryman at the Restaurant from July 19, 2015 to January 20, 2016, although he also had additional responsibilities like preparing celery packages. *Id.* 62:3–5, 64:12–15; Pl. Ex. 2 ¶ 2, ECF No. 166-2. He generally worked five days a week, from 11:00 a.m. to 11:00 p.m., with a ten-minute meal break. 78:22–24, 84:17–19,

90:24–91:1; Pl. Ex. 2 ¶ 2, ECF No. 166-2.

The Court finds that Dong Chen was employed as a deliveryman at the Restaurant from October 14, 2013 to January 20, 2016, although he also had additional responsibilities like preparing celery packages. *Id.* 95:23–96:12, 102:2–4. He generally worked five days a week, from 11:00 a.m. to 11:00 p.m., with a ten-minute meal break. *Id.* 99:19–100:2, 121:1–5. During football season, from October to February, he worked six days a week. *Id.* 100:3–15.

The Court finds that Changxing Li was employed as a deliveryman at the Restaurant from August 25, 2015 to January 20, 2016, although he also had additional responsibilities like packaging bags for deliveries. Trial Tr. 354:3–17, 365:4–5, ECF No. 158. From August until September, he worked five days a week, from 11:00 a.m. to 11:00 p.m., with a ten-minute meal break. *Id.* 354:8–18, 355:14–15. From the middle of September until January 2016, he worked six days a week. *Id.* 354:17–19.

Defendants claim that Plaintiffs only worked a total of nine hours each day, at most, because they were directed to leave the Restaurant at 2:00 p.m. and return at 5:00 p.m. Def. Post-Trial Mem. at 7–8. Patel testified that he did not need Plaintiffs to work from 2:00 p.m. to 6:00 p.m, and that they did not work during this period. Trial Tr. 165:3–6, 288:5–7. Patel's testimony, however, does not match what was listed on handwritten records. *See* Pl. Ex. 4 at 24–74, ECF No. 166-4.[3] The records are consistent with Plaintiffs' testimony that they worked from approximately 11:00 a.m. to 11:00 p.m. *See id.* Patel testified that these records do not reflect the hours that an employee worked, but instead merely indicate an employee's arrival and departure from the workplace. Trial. Tr. 164:2–8. Faced with two inconsistent versions of the facts, the Court relies on the source that it finds more credible: Plaintiffs' evidence. Moreover, although

---

[3] The page numbers listed are referenced by the ECF page numbers.

4

Patel testified at trial that Plaintiffs were off the clock between lunch and dinner from 2:00 p.m. to 6:00 p.m., *id.* 176:1–12, in his deposition he testified that Plaintiffs occasionally engaged in side work between 2:00 p.m. and 6:00 p.m., specifically, bagging blue cheese and celery, between 2:00 p.m. and 6:00 p.m., Patel Dep., Pl. Ex. 7 at 14:18–25, ECF No. 166-7. The Court finds, therefore, that Plaintiffs worked from 11:00 a.m. to 11:00 p.m. each day while employed at the Restaurant.

C. Rate of Pay

Next, the Court finds that each Plaintiff was paid $50 per day. *See* Trial Tr. 10:5–9 (Feng Chen's testimony that he was paid $50 per day), 101:6–9 (Dong Chen's testimony that he was paid $50 per day), 385:4–5 (Changxing Li's testimony that he was paid $50 per day); Pl. Ex. 2 ¶ 2, ECF No. 166-2 (Cheng Li's declaration that he was paid $50 per pay). Each Plaintiff also received tips. Trial Tr. 51:18–23 (Feng Cheng's testimony that he received tips), 56:7–25 (Feng Chen's testimony that all delivery workers received tips), 385:10–17 (Changxing Li's testimony that he received tips). Patel testified that Plaintiffs were paid "$50 dollars [in cash] for the hours they worked for the day as a base" and that he would deduct the cost of the meals they ate at the Restaurant from their pay. *Id.* 197:16–198:8.

D. Notice

Feng Chen and Changxing Li testified that they were never provided pay stubs or notices about their wage rate, frequency of payment, minimum wage, or tip credit. *Id.* 14:3–14, 19:12–15 (Feng Chen testimony), 363:18–364:3 (Changxing Li testimony). Cheng Li and Dong Chen made the same representations through their sworn declarations. Pl. Ex. 2 ¶¶ 3–5, ECF No. 166-2; Pl. Ex. 3 ¶¶ 3–5, ECF No. 166-3.

Patel testified that he "tried" to give Plaintiffs "notices and everything." Trial. Tr. 270:7–

8. Specifically, he "tried to give [Plaintiffs] papers to sign like the tip wage notices and all that [but] [t]hey refused to — they acted like they don't even understand what I'm saying." *Id.* 270:12–14. Patel testified that Plaintiffs were given oral notice of their wages and the tip credit by another employee who has since moved to California. *Id.* 270:14–22, 272:1–9, 287:8–10. Patel also stated that there was a "whole wall in [the] basement with posters" "since day 1." *Id.* 199:13–21.

Faced with conflicting evidence, the Court finds Plaintiffs' testimony more credible and, therefore, finds that Defendants never informed Plaintiffs, either orally or in writing, of their hourly pay, or of the FLSA or NYLL's overtime pay, spread-of-hours pay, or tip credit provisions.

### E. Bicycles

The Court also finds that Plaintiffs, as delivery workers, were required by Defendants to purchase bicycles to make their deliveries.

Plaintiffs used bicycles to make their deliveries. *See, e.g., id.* 17:4, 35:8–10, 48:4–49:1, 62:18–21. The delivery range was 20 blocks north and south and between FDR Drive and Sixth Avenue east to west. *Id.* 35:14–36:2. Bicycles were required because deliveries would be "heavily delayed" if Plaintiffs made deliveries on foot. *Id.* 17:4–7, 63:5–10.

Plaintiffs testified uniformly, and repeatedly, that Defendants did not provide them with bicycles to make deliveries. *Id.* 16:15–17, 48:17–49:1, 62:22–24, 78:19–21, 364:4–7. Patel testified that he provided "regular" bicycles, but Plaintiffs "[chose] not to use them" because they preferred to use electric bicycles. *Id.* 202:21–204:9. The Court finds Plaintiffs' testimony more credible and does not credit Patel's testimony that he provided bicycles.

Although no documentary evidence was introduced, Plaintiffs attested to the following

expenses incurred during Defendants' ownership of the Restaurant:

- Feng Chen: One bicycle for $1,420. *Id.* 17:8–10, 18:24–4. He took this bicycle with him when his employment ended on January 20, 2016 and used it at another restaurant for deliveries until it was stolen. *Id.* 31:3–5, 47:1–25.
- Cheng Li: Three bicycles, which each cost $1,450. *Id.* 62:24–63:2. Two were stolen between July 2015 and January 2016 and Cheng Li sold the third one for approximately $600 sometime after his employment ended with the Restaurant. *Id.* 77:21–78:17.
- Dong Chen: One bicycle for $1,400. *Id.* 97:8–11. He took the bicycle with him when his employment ended with the Restaurant and estimates that it was worth between $700 and $800 at that time. *Id.* 97:14–22.
- Changxing Li: One bicycle for $850. *Id.* 364:8–17. He spent between $40 and $50 a month maintaining the bike. *Id.* 364:19–365:2. He continued to use the bike after January 2016 and ultimately sold it for $450. *Id.* 376:7–20.

II.  Conclusions of Law

A.  Successor Liability

Plaintiffs argue that Patel and East Wingers should be liable as successors to Defaulting Defendants because Plaintiffs have successfully "alleged successor liability." Pl. Post-Trial Mem. at 28, ECF No. 165. The Court disagrees.

Plaintiffs bear the burden of proving successor liability. *See Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp.*, 635 F.3d 48, 52 (2d Cir. 2011) ("Because the 'general rule' is that a purchaser of assets does not assume the predecessor's liability, it follows that the proponent of successor liability must offer proof that one of the [] exceptions to the general rule applies."). Plaintiffs concede that Defendants cannot be held liable under the New York common law test for successor liability because there "is no legal continuity of ownership." Pl. Post-Trial Mem. at 23. Instead, Plaintiffs argue that Defendants are liable under the substantial continuity test. *Id.* at 24–28.

"The Second Circuit has yet to address whether the substantial continuity test applies in the FLSA context." *Bautista v. Beyond Thai Kitchen, Inc.*, No. 14 Civ. 4335, 2015 WL 5459737,

at *3 (S.D.N.Y. Sept. 17, 2015). Several district courts in this Circuit have held that it applies to FLSA claims. *See, e.g.*, *id.* at *4; *Jai Fu Chen v. New 9th Ave Pearl on Sushi Inc.*, No. 14 Civ. 580, 2015 WL 3947560, at *4 (S.D.N.Y. June 29, 2015); *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 404 (S.D.N.Y. 2012). This Court, however, need not decide that question as Plaintiffs have failed to establish successor liability under the substantial continuity test.

The substantial continuity test "focus[es] on whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43 (1987) (internal quotation marks and citation omitted). Under this test, courts generally analyze nine factors:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Battino*, 861 F. Supp. 2d at 404 (internal quotation marks and citation omitted). "Of those factors, courts have recognized that at least the first factor ('notice' of the claim prior to acquisition) is 'critical' to any finding of successor liability." *Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 314 (S.D.N.Y. 2014).

Plaintiffs have failed to prove the first factor—that Defendants "had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor." *Battino*, 861 F. Supp. 2d at 404 (internal quotation marks and citation omitted). First, Defendants did not have notice of this lawsuit at the time of the July 31, 2015 sale because this lawsuit was not filed until

February 15, 2016.  *See* ECF No. 1.  However, some courts in this district have found that

"knowledge of the failure to pay alone is sufficient to put a successor on notice of potential

liability" even if a lawsuit has not yet been filed at the time of the sale.  *Battino*, 861 F. Supp. 2d

at 407.  For example, in *Battino*, the defendant stated that he was aware of the successor's failure

to pay employees' wages before he purchased the business and, in response, he negotiated the

transaction to include indemnification provisions based on this potential liability.  *Id.* at 406.

Here, by contrast, Patel credibly testified that he did not have any knowledge of the potential

claims.  *See supra* section I.A.  Moreover, there is no evidence in the record showing that

Defendants had knowledge.  In particular, the sales agreements presented do not contain any

indemnification provisions, and instead include language that supports Patel's testimony.  *See* Pl.

Ex. 5, ECF No. 166-5; Pl. Ex. 6 § 1.1, ECF No. 166-6 ("Buyer shall purchase and acquire from

Seller good and marketable title in and to the Acquired Assets free and clear of any and all liens

or encumbrances whatsoever, except as set forth herein.").  Plaintiffs argue that Defendants had

knowledge because they observed the business operations of Defaulting Defendants.  Pl. Post-

Trial Mem. at 25.  However, the only evidence that Plaintiffs point to is Patel's testimony, which,

as previously discussed, is insufficient to establish that Defendants had actual notice of the wage

and hour violations of Defaulting Defendants.  *See Xue Ming Wang v. Abumi Sushi Inc.*, 262 F.

Supp. 3d 81, 92–95 (S.D.N.Y. 2017) (concluding that there was no evidence that the defendants

had actual or constructive notice of their predecessors' alleged FLSA violation despite the

plaintiff's claims that the defendants visited and worked at the restaurant "almost every day for

about a month prior to the purchase").

Turning to the second factor, the ability of the predecessor to provide relief, Plaintiffs

argue, without citing case law, that it is met because Defendants' predecessors, the Defaulting

Defendants, have defaulted. This too is insufficient to satisfy Plaintiffs' burden. *Cf. id.* at 95 (rejecting the plaintiff's argument that predecessors, who had not appeared, could not provide relief because they had sold the business' assets to defendants). Therefore, this factor does not support the imposition of successor liability.

Because these two factors are "indispensable to the imposition of successorship liability under the 'substantial continuity' test," *id.* at 91, the Court finds that Plaintiffs have failed to establish successor liability.[4] Accordingly, the relevant time period for purposes of any potential liability is July 31, 2015, the date Defendants purchased the Restaurant, until January 20, 2016, the date Plaintiffs stopped working at the Restaurant.

### B. Employer Status

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and courts in this Circuit interpret the NYLL's definition of "employer" coextensively with the FLSA, *Sethi v. Narod*, 974 F. Supp. 2d 162, 188–89 (E.D.N.Y. 2013) (collecting cases). "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Additionally, the Second Circuit has explained that "[a]bove and beyond the plain language . . . the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'" *Id.* (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).

---

[4] The Court agrees with the district court's rationale in *Xue Ming Wang* that "[t]o hold a purchaser of assets liable as a successor without notice of the potential liability or where the predecessor is capable of providing relief to the wronged party simply because the purchaser used the purchased assets and retained substantially the same work force to conduct a substantially similar business would directly hamper, rather than facilitate, the transfer of corporate assets to their most valuable uses." 262 F. Supp. 3d at 91.

Courts, therefore, must apply the four-factor "economic reality" test to determine if a given individual is an "employer" under the FLSA and NYLL. Courts consider "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Carter*, 735 F.2d at 12). No single factor is dispositive. *Id.* Instead, these factors are meant to provide courts with a means of considering the "totality of circumstances" rather than "confin[ing them] to a narrow legalistic definition." *Id.* The law

> does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees [to be considered an employer]. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control "do[ ] not diminish the significance of its existence."

*Id.* (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982)).

Defendants argue that Patel was not an "employer" because Plaintiffs have failed to allege that he "was involved in daily management decisions." Def. Post-Trial Mem. at 17. However, Patel testified that he "rehired" Plaintiffs when he purchased the Restaurant, hired another employee, and generally had the authority to hire and fire. Trial Tr. 329:24–330:22. He also testified that he controlled the individual who set Plaintiffs' work schedules, *id.* 193:5–195:18, and made decisions about Plaintiffs' rate and method of payment, *id.* 196:23–197:4. He further testified that he did "managerial paperwork" and made "sure everyone's paid." *Id.* 299:8–9. Therefore, Defendants were Plaintiffs' "employer" within the meaning of the FLSA. *See Martinez v. Alimentos Saludables Corp.*, No. 16 Civ. 1997, 2017 WL 5033650, at *8 (E.D.N.Y. Sept. 22, 2017). Because he exercised operational control over Plaintiffs, and

qualifies as an employer, Patel "may be held jointly and severally liable to [Plaintiffs] along with any corporate employer." *Id.*

### C. Tip Credit

Before assessing Plaintiffs' minimum wage and overtime claims, the Court will first determine whether Defendants were eligible to take a tip credit. Both the FLSA and NYLL require an employer to pay its employees a minimum wage. 29 U.S.C. § 206(a); N.Y. Lab. Law § 652(1). However, both statutes "permit an employer to pay a tipped [employee] a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage."[5] *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (citing 29 U.S.C. §§ 203(m), 206(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, §§ 137-1.5, 146-1.3(b)). This allowance is known as a "tip credit." *Id.*

Under the FLSA, an employer must satisfy two requirements to take advantage of the tip credit: "(i) the employer must have informed the employee of the Section 203(m) tip credit provisions, and (ii) the employee must either have retained all tips received or participated in a permissible tip pool." *Zhou v. Aberdeen Dim Sum & Seafood Inc.*, No. 14 Civ. 2014, 2016 WL 6238651, at *2 (S.D.N.Y. Oct. 24, 2016). These prerequisites are strictly construed and "must be satisfied even if the employee received tips at least equivalent to the minimum wage." *Id.* (internal quotation marks and citation omitted).

With respect to the notice requirement, "[e]mployers bear the burden of showing that they satisfied the FLSA's notice requirement by, for example, providing [the] employee[] with a

---

[5] The FLSA defines "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). Under the NYLL, "service employees" and "food service workers" are considered "tipped employees." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3.

copy of § 203(m) and informing [the employee] that [his] tips will be used as a credit against the minimum wage as permitted by law." *He v. Home on 8th Corp.*, No. 09 Civ. 5630, 2014 WL 3974670, at *5 (S.D.N.Y. Aug. 13, 2014) (internal quotation marks and citation omitted). "If [an] employer cannot show that it has informed [the] employee[] that tips are being credited against [his] wages, then no tip credit can be taken and the employer is liable for the full minimum-wage." *Inclan*, 95 F. Supp. 3d at 497 (internal quotation marks and citation omitted); *see also Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176, 2016 WL 3248493, at *24 (S.D.N.Y. June 9, 2016) ("[D]efendants have not complied with the notice provision under the FLSA and therefore cannot avail themselves of a tip credit to satisfy their minimum wage obligations . . . [because although] the delivery workers, upon their hiring, were informed that they would be paid a fixed weekly wage and tips, [the defendant] never informed the employees that it intended to use the tips the workers received to satisfy any part of its minimum wage obligations."); *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 461, 467 (S.D.N.Y. 2015) (crediting the plaintiffs' account that there was no discussion about tip credit and, therefore, finding that the defendants' were not entitled to take a tip credit).

The NYLL has even more stringent notice requirements. An employer may not take a tip credit under the NYLL unless the employer has given the employee *written* notice stating: (1) the amount of tip credit to be taken from the basic minimum hourly rate; and (2) that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2(a); *see also id.* § 146-1.3 ("An employer may take a credit towards the basic minimum hourly rate if [the tipped employee] receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part."). The employer must also provide the notice in English and "any other language spoken by the . . .

employee as his/her primary language," obtain "[a]n acknowledgment of receipt signed by the employee," and keep the signed acknowledgement "on file for six years." *Id.* § 146-2.2(a)(1–2), (c).

Defendants have failed to satisfy the notice requirement of either the FLSA or NYLL. Defendants argue that they have met their burden to establish that they gave Plaintiffs notice because "no plaintiff testified regarding a tip credit, and only plaintiff witness [Patel] testified regarding the prevailing minimum wage and the tip credit, and his notice to plaintiffs." Def. Post-Trial Mem. at 11. Changxing Li, however, testified that there were no postings on the wall regarding tip credits.[6] Trial Tr. 363:25–364:2. And the other Plaintiffs' sworn declarations represent that they were never informed that their wages were reduced by a tip credit. *See, e.g.*, Pl. Ex. 1 ¶ 4, ECF No. 166-1; Pl. Ex. 2 ¶ 4, ECF No. 166-2; Pl. Ex. 3 ¶ 4, ECF No. 166-3. Moreover, the only evidence Defendants can point to is Patel's testimony that he had another employee, Dong, give Plaintiffs "oral notice of what their wages would be and the tip credit." Trial Tr. 270:20–22. As previously discussed, however, the Court did not find this testimony to be credible.[7] Accordingly, Defendants may not utilize a tip credit to reduce the minimum wage and overtime wages they were obliged to pay Plaintiffs under the FLSA and NYLL.

### D. Minimum Wage

The FLSA and NYLL require an employer to pay its employees a minimum wage. 29 U.S.C. § 206(a)(1)(c) (establishing a federal minimum wage of $7.25 per hour); N.Y. Lab. Law § 652(1) (establishing a state minimum wage of $8.75 per hour for the 2015 calendar year and

---

[6] Moreover, although a "generic government poster could inform employees that minimum wage obligations exist, it could not possibly inform employees that their employers intend to take the tip credit with respect to their salary." *Salinas*, 123 F. Supp. 3d at 467 (internal quotation marks, citation, and alteration omitted).

[7] Furthermore, even if this testimony were credible, Defendants' "notice" would still be insufficient under the NYLL because it was not in writing.

$9.00 per hour for the 2016 calendar year). An employee seeking to recover underpayment of wages "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–687 (1946). "However, where an employer fails to maintain adequate records of the employee's hours worked, wages earned, and other terms and conditions of employment, the employee is found to satisfy this burden if he or she can prove that the employee in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Hernandez*, 2016 WL 3248493, at *27 (internal quotation marks and citation omitted); *see also Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, No. 15 Civ. 2158, 2015 WL 5710320, at *2 (S.D.N.Y. Sept. 25, 2015), *report and recommendation adopted*, 2017 WL 818469 (S.D.N.Y. Mar. 1, 2017) ("In a FLSA case, in the absence of rebuttal by defendants, plaintiff's recollection and estimate of hours worked is presumed to be correct.").

Here, Defendants did not keep adequate employment records. The only records submitted are handwritten, do not cover the entire time period in question, and do not clearly set out the rate of pay, or even if the records pertain to Plaintiffs. *See, e.g.*, Pl. Ex. 4 at 24–74, ECF No. 166-4. Plaintiffs have met their burden of proving their hours worked and their wages through their live testimony and declarations. Moreover, Patel's testimony is consistent with Plaintiffs' testimony that they were paid $50 per day. *See* Trial Tr. 197:12–19. Accordingly, Defendants paid Plaintiffs a fixed salary that, based on the hours the Court has found Plaintiffs worked (between sixty and seventy-two hours per week), amounts to a sub-minimum wage. *See supra* section I.B (finding that Plaintiffs worked 12 hours per day and between five and six days

15

a week).[8]

A plaintiff may recover under whichever statute—the FLSA or NYLL—provides the greater relief. *See, e.g.*, *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14 Civ. 10234, 2016 WL 4704917, at *6 (S.D.N.Y. Sept. 8, 2016) (collecting cases), *report and recommendation adopted*, 2016 WL 6879258, at *1 (S.D.N.Y. Nov. 21, 2016). In this case, greater relief is available under the NYLL as the state minimum wage was higher than the federal minimum wage throughout the duration of Plaintiffs' employment at the Restaurant. Accordingly, the Court finds that Plaintiffs were underpaid by $4.59 per hour for each week of employment during 2015 and $4.84 per hour for each week of employment during 2016.[9] Plaintiffs' damages vary depending on their date of hire and weekly hours. The Court, therefore, awards damages as follows under the NYLL:

- Feng Chen and Dong Chen: $7,701.12 in unpaid minimum wages each[10]

- Cheng Li: $6,784.80 in unpaid minimum wages[11]

- Changxing Li: $6,985.08 in unpaid minimum wages[12]

---

[8] The Court calculates that Plaintiffs worked between sixty and seventy-two hours per week because they worked 12 hours per day for 5-6 days of the week: 12 hours per day x 5 days = 60 hours per week, 12 hours per day x 6 days = 72 hours per week.

[9] Plaintiffs were paid $50 per day and worked 12 hours per day (50 ÷ 12=$4.16). Therefore, Plaintiffs' hourly rate was $4.16. The Court calculates the underpayment per hour in 2015 as $8.75 − $4.16 = $4.59, and the underpayment in 2016 as $9.00 − $4.16 = $4.84.

[10] Feng Chen and Dong Chen were employed by Defendants from the date of purchase, July 31, 2015, until January 20, 2016. They each worked sixty hours per week from August through September (12 hours per day, 5 days per week), and seventy-two hours per week (12 hours per day, 6 days per week) from October through January 20, 2016. Therefore, they were each underpaid by $275.40 per week in August and September ($4.59 per hour x 60 hours), for a total underpayment during those two months of $2,203.20 ($275.40 per week x 8 weeks). They were each underpaid by $330.48 per week from October to December 2015 ($4.59 per hour x 72 hours) for a total underpayment during those three months of $4,626.72 ($330.48 per week x 14 weeks). They were each underpaid by $348.48 per week for the month of January ($4.84 per hour x 72 hours), for a total underpayment of $871.20 ($348.48 per week x 2.5 weeks).

[11] Cheng Li was employed by Defendants from the date of purchase, July 31, 2015, until January 20, 2016. He worked sixty hours per week for that entire period (12 hours per day x 5 days per week). Therefore, he was underpaid by $275.40 per week from August to September 2015 ($4.59 per hour x 60 hours), for a total underpayment in 2015 of $6,058.8 ($275.40 per week x 22 weeks). He was underpaid by $290.40 per week in January 2016, for a total of $726 total underpayment ($290.40 per week x 2.5 weeks).

E.  Overtime

Under both the FLSA and NYLL, the employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay" for each hour worked in excess of forty per week.  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *accord* 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4.  Under the FLSA, the regular rate of pay "is determined by dividing [the employee's] total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.  Under the NYLL, by contrast, a restaurant industry employee's "regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5(b).  "However, if an employee's regular rate is below the required minimum wage, the employee's overtime rate is calculated using the required minimum wage as the regular rate."  *Peralta v. M & O Iron Works, Inc.*, No. 12 Civ. 3179, 2014 WL 988835, at *7 (E.D.N.Y. Mar. 12, 2014) (internal quotation marks ad and citation omitted); *see also Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 310 (E.D.N.Y. 2009) ("Because plaintiff's regular wages for all the applicable periods are below the minimum wage, the plaintiff's regular rate for purposes of overtime should have been the full minimum wage." (internal quotations and citation omitted)).

As previously discussed, the Court finds credible Plaintiffs' testimony regarding their

---

[12] Changxing Li was employed by Defendants from August 25, 2015 until January 20, 2016.  From August until mid-September, he worked sixty hours per week (12 hours per day x 5 days per week), from mid-September until January he worked seventy-two hours per week (12 hours per day x 6 days per week).  Therefore, he was underpaid by $275.40 per week for his first three weeks of employment ($4.59 per hour x 60 hours), for a total underpayment of $826.20 ($275.40 per week x 3 weeks).  He was underpaid by $330.48 per week from mid-September until December 2015 ($4.59 per hour x 72 hours), for a total underpayment during that time of $5,287.68 ($330.48 per week x 16 weeks).  He was underpaid by $348.48 per week in January 2016 ($4.84 per hour x 72 hours), for a total underpayment during that month of $871.20 ($348.48 per week x 2.5 weeks).

hours worked. A shift that begins at 11:00 a.m. and lasts until 11:00 p.m. with a ten-minute

break would include more than eight hours of work per day (and thus more than 40 hours per

week in a five or six-day work-week). Further, Defendants do not claim to have ever paid

overtime pay. Accordingly, Plaintiffs have met their burden to establish that they worked more

than forty hours per week without compensation for overtime.

As made clear in the discussion of minimum wage, Plaintiffs' regular rate of pay was

below minimum wage. Therefore, the Court will calculate overtime using the minimum wage

during the relevant time period (2015 or 2016). *See Martinez v. Dannys Athens Diner Inc.*, No.

16 Civ. 7468, 2017 WL 6335908, at *4 (S.D.N.Y. Dec. 5, 2017) ("Where Plaintiff's regular

hourly rate falls below minimum wage, however, the regular rate for purposes of calculating

overtime is the relevant minimum wage."), *appeal filed*, No. 18-80 (2d Cir. Jan. 10, 2018);

*Pineda-Herrera v. Da-Ar-Da, Inc.*, No. 09 Civ. 5140, 2011 WL 2133825, at *3 (E.D.N.Y. May

26, 2011) (calculating unpaid overtime using minimum wage because plaintiffs worked at

"regular rates" below minimum wage, and federal regulations clarify that "the words 'regular

rate at which he is employed' . . . must be construed to mean the regular rate at which he is

lawfully employed" (internal quotation marks and citation omitted)). The Court will use the

NYLL as it provides greater relief. *See Xochimitl*, 2016 WL 4704917, at *6. Plaintiffs are owed

$4.37 per hour for every hour of overtime they worked in 2015, and $4.50 for every hour of

overtime they worked in 2016.[13]

Accordingly, the Court awards damages as follows:

---

[13] Plaintiffs are entitled to one and a half times the minimum wage for each hour of overtime, however, because the Court has already calculated damages in the minimum wage section to compensate Plaintiffs for their unpaid minimum wage, including during any overtime hours worked, the Court will award damages at 50% of the minimum wage during the relevant time period. The minimum wage was $8.75 in 2015, and $9.00 in 2016. Accordingly, Plaintiffs are owed $4.37 for each hour of overtime worked in 2015 ($8.75 x .5), and $4.50 for each hour of overtime worked in 2016 ($9.00 x .5).

- Feng Chen and Dong Chen: $2,944.96 in unpaid overtime wages each[14]

- Cheng Li: $2,102.80 in unpaid overtime wages[15]

- Changxing Li: 2,787.64 in unpaid overtime wages[16]

F. Notice Claims

Under the NYLL, employers must provide employees with wage notices at the time of hiring. N.Y. Lab. Law § 195(1). Section 195(1) mandates that "[e]very employer shall . . . provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing" several categories of information, including "the rate or rates of pay and basis thereof . . .; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; . . . the regular pay day designated by the employer." and "the physical address of the employer's main office." *Id.* § 195(1)(a).

Additionally, the NYLL requires employers to provide their employees with paystubs on

---

[14] Feng Chen and Dong Chen both worked 60 hours per week from August until September 2015. They are each owed 20 hours of overtime per week for each of those weeks. Therefore, they are each owed $87.40 per week ($4.37 per hour x 20 hours) in overtime, for a total of $699.20 ($87.4 per week x 8 weeks) for those two months. They both worked seventy-two hours per week from October until December 2015. They are owed 32 hours of overtime per week for each of those weeks. Therefore, they are each owed $139.84 per week ($4.37 per hour x 32 hours) in overtime, for a total of $1,957.76 ($139.84 per week x 14 weeks) for those three months. They both worked seventy-two hours per week in January 2016. They are owed 32 hours per week of overtime for each of those weeks. Therefore, they are both owed $144 per week ($4.50 per hour x 32 hours), for a total of $288 ($144 per week x 2 weeks). Although they worked into the third week of January, because their employment ended on January 20, a Wednesday, they did not work more than forty hours that week.

[15] Cheng Li worked sixty hours per week from August until January 20, 2016. He is owed for 20 hours of overtime per week for each of those weeks. Therefore, he is owed $87.40 per week ($4.37 per hour x 20 hours) in overtime for each week of work from August until December 2015, for a total of $1,922.80 ($87.40 per week x 22 weeks). He is owed $90 per week for the weeks worked in January 2016, for a total of $180 ($90 x 2).

[16] Changxing Li worked sixty hours per week from August 25, 2015 until mid-September 2015; he then worked seventy-two hours per week until January 20, 2016. He is owed 20 hours of overtime per week for each of the weeks from August 25 until mid-September. He is owed 32 hours of overtime per week for each of the weeks worked from mid-September until January 20, 2016. He is owed $87.40 per week for the three weeks in August and September ($4.37 per hour x 20 hours), for a total of $262.20 ($87.4 per week x 3 weeks). He is owed $139.84 per week from mid-September until December 2015 ($4.37 per hour x 32 hours), for a total of $2,237.44 ($139.84 per week x 16 weeks). He is owed $144 per week ($4.50 per hour x 32 hours) for each week of work in January 2016, for a total of $288 ($144 per week x 2 weeks).

each pay day that list "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." *Id.* § 195(3).

As discussed above, *supra* section I.D, Plaintiffs were never given a wage notice or paystubs, and Defendants offer no records of them. Moreover, "Defendants concede liability regarding [this count because] no pay notices or wage statements were provided to [P]laintiffs by Defendants." Def. Post-Trial Mem. at 5.

Since February 26, 2015, the NYLL has provided employees with $50 per day, up to a total of $5,000, for violations of the wage notice requirement. *See* N.Y. Lab. Law § 198(1-b). As each Plaintiff worked without notice for more than 100 days after February 26, 2015, each is entitled to the statutory maximum award of $5,000 for Defendants' failure to provide him with a wage notice.

Since February 26, 2015, the NYLL has provided employees with $250 per day, up to a total of $5,000, for violations of the paystub requirement. *See id.* § 198(1-d). As each Plaintiff worked without a paystub for more than 20 days after February 26, 2015, each is entitled to the statutory maximum award of $5,000.

Accordingly, the Court awards damages to each Plaintiff in the amount of $5,000 for violations of the NYLL § 195(1) and $5,000 for violations of the NYLL § 195(3).

### G. Spread of Hours

The NYLL entitles an employee to an additional hour of pay at the minimum wage for each day that an employee works over an interval exceeding ten hours. N.Y. Comp. Codes R. &

Regs. tit. 12, § 146-1.6(a). The "spread of hours" refers to "the length of the interval between the beginning and end of an employee's workday[, and] . . . includes working time plus time off for meals plus intervals off duty." *Id.* § 146-1.6. "[A]ll employees in restaurants . . . regardless of a given employee's regular rate of pay," are covered by the spread-of-hours requirements. *Id.* § 146-1.6(d). In other words, employers must "pay [restaurant workers] an extra hour's pay at the regular minimum wage for each day they work more than ten hours." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 241 (2d Cir. 2011) (citing an earlier version of the regulations).

The Court finds that Defendants are liable for unpaid spread-of-hours pay as to all Plaintiffs. As the Court previously found, each Plaintiff regularly worked shifts with spread of hours that exceeded ten hours each day. *See supra* section I.B. Therefore, Defendants are liable for spread-of-hours pay for each day that Plaintiffs worked, over the full period that the Court has found that each Plaintiff worked. Here, Plaintiffs credibly testified that they worked twelve hours per day, five to six days a week. Accordingly, for each day of work in 2015 each Plaintiff is entitled to $17.50 ($8.75 per hour x 2 hours), and $18.00 ($9.00 per hour x 2 hours) for each day of work in 2016. The Court awards damages as follows:

- Feng Chen and Dong Chen: $2,440 each in unpaid spread-of-hour wages[17]

- Cheng Li: $2,150 in unpaid spread-of-hour wages[18]

---

[17] Feng Chen and Dong Chen worked 5 days a week, 12 hours per day, in August and September 2015. They are each owed $87.50 per week for each week of work in August and September 2015 ($17.50 per day x 5 days), for a total of $700 each ($87.50 per week x 8 weeks). They each worked 6 days a week, 12 hours a day from October 2015until January 20, 2016. They are each owed $105 per week ($17.50 per day x 6 days) for each week from October until December 2015, for a total of $1,470 each ($105 per week x 14 weeks). They are each owed $108 for each week worked in January 2016 ($18 per day x 6 days), for a total of $270 ($108 per week x 2.5 weeks).

[18] Cheng Li worked 5 days a week, 12 hours per day, from August 2015 until January 20, 2016. He is owed $87.50 per week for each week worked in 2015 ($17.50 per day x 5 days), for a total of $1,925 in 2015 ($87.50 per week x 22 weeks). He is owed $90 per week for each week worked in 2016 ($18 per day x 5 days), for a total of $225 ($90 per week x 2.5 weeks).

- Changxing Li: $2,212.50 in unpaid spread-of-hour wages[19]

H. Tools of the Trade

Next, the Court finds that Defendants violated the FLSA and NYLL[20] because Plaintiffs were required to purchase and/or use bicycles to make deliveries. "An employer violates the FLSA if it requires an employee to purchase 'tools of the trade which will be used in or are specifically required for the performance of the employer's particular work' and 'the cost of such tools [purchased by the employee] cuts into the minimum or overtime wages required to be paid to [the employee].'" *Salinas*, 123 F. Supp. 3d at 476 (quoting 29 C.F.R. § 531.35). Similarly, under the NYLL, "[i]f an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.7(c).

"Other courts in this District have found that bicycles qualify as tools of the trade under the FLSA for delivery workers, such that delivery workers' expenses related to the purchase and maintenance of bicycles formed part of their damages under factual circumstances similar to those here." *Hernandez*, 2016 WL 3248493, at *30; *see also Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010) ("Vehicles such as bicycles . . . are considered tools of the trade if employees are required to possess and utilize them in the course of their

---

[19] Changxing Li worked 5 days a week, 12 hours per day, for a three-week period from August 2015 until mid-September 2015. He is owed $87.50 ($17.50 per day x 5 days) for each of those weeks, for a total of $262.50 ($87.50 per week x 3 weeks). He worked 6 days a week, 12 hours per day, from mid-September 2015 until January 20, 2016. He is owed $105 ($17.50 per day x 6 days) for each of those weeks, for a total of $1,680 ($105 per week x 16 weeks). He is owed $108 for each week worked in January 2016 ($18 per day x 6 days), for a total of $270 ($108 per week x 2.5 weeks).

[20] Although Plaintiffs' second amended complaint did not request relief under these statutes, *see* ECF No. 27 ¶¶ 153–160 (seeking reimbursement for costs of bicycles as breach of implied contract), Plaintiffs' post-trial memorandum seeks reimbursement under the FLSA and NYLL. Pl. Post-Trial Mem. at 34. The Court, therefore, considers Plaintiffs' right to recover under those statutes. *See* Fed. R. Civ. P. 54(c) (aside from default judgments, "[e]very other final judgment should grant the relief to which each party is entitled, even if the other party has not demanded that relief in its pleadings").

employment." (internal quotation marks and citation omitted)).

Plaintiffs' testimony, which the Court finds credible, established that they were required to purchase bicycles, which were used and specifically required for their delivery work. *See supra* section I.E. Because they were not reimbursed for the costs of the bicycles and the repairs, and because they were paid below minimum wage, Defendants are liable for these costs.

However, aside from their testimony, Plaintiffs have produced no documentation to support their estimates of the amounts they spent on bicycles and repairs. The Court finds that Plaintiffs' estimates are too high, particularly because Plaintiffs only worked for Defendants for approximately six months from July 2015 to January 2016, and Plaintiffs continued to use their bicycles at other places of employment. *See, e.g.*, Pl. Post-Trial Mem. at 40 (stating that Feng Chen seeks $5,300 in damages for his bicycles). The Court, therefore, awards damages that are less than the amounts that Plaintiffs seek. *See Hernandez*, 2016 WL 3248493, at *33 (reducing damages "because plaintiffs have not provided documentation to support their declarations as to the amount they spent, or explanations for why they purchased more than one of certain items, so as to enable the Court to evaluate the reasonableness of the amounts they attest that they spent"); *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725, 2010 WL 4159391, at *5 (S.D.N.Y. Sept. 30, 2010) (limiting the plaintiffs' damages for bicycle expenses to $500 per year because they did not provide "a detailed explanation to support [their] expense estimates").

The Court hereby awards damages as follows:

- Feng Chen: $400 (1 bicycle)

- Cheng Li: $600 (3 bicycles, minus the resale value of the third bicycle)

- Dong Chen: $400 (1 bicycle)

- Changxing Li: $ 400 (1 bicycle), $200 (maintenance)[21]

I.  Misappropriation of Gratuities

Plaintiffs' amended complaint asserts a claim for "illegal pay deductions and deductions from gratuities" under NYLL §§ 196-d and 198-b, alleging that Defendants unlawfully retained portions of their tips.  Compl. ¶¶ 136–140.  Section 196-d of the NYLL prevents employers from demanding or accepting any tips received by an employee, N.Y. Lab. Law § 196-d, while § 198-b prevents unlawful kickbacks, *Goldberg v. Jacquet*, No. 14 Civ. 1581, 2015 WL 5172939, at *3 (S.D.N.Y. Sept. 3, 2015).

Plaintiffs' post-trial brief does not mention this claim, nor did Plaintiffs present any evidence at trial in support of this claim.  In fact, Plaintiffs testified that they received their share of the tips and Defendants did not take any portion of the tips.  *See, e.g.*, Trial Tr. 57:11–58:16.  Plaintiffs have failed to meet their burden to establish a violation of NYLL §§ 196-d and 198-b.  Accordingly, Count Five of the Second Amended Complaint is DISMISSED.

J.  Liquidated Damages

"Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages."  *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)).  The Court, however, has the "discretion to deny liquidated damages where the employer shows that . . . it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA."  *Id.* (citing 29 U.S.C. § 260).  The employer demonstrates "good faith" by

---

[21] Changxing Liu is the only Plaintiff who testified that he incurred costs repairing and maintaining his bicycle, specifically that he spent between $40 and $50 per month maintaining the bike.  Courts within this Circuit have found $40 to be a reasonable cost for bicycle repairs.  *See, e.g., Zhen Ming Chen*, 2015 WL 5710320, at *4 (accepting plaintiff's claim that he spent $40 per month in bicycle repairs); *Maldonado v. La Nueva Rampa, Inc*., 10 Civ. 8195, 2012 WL 1669341, at *8 (S.D.N.Y. May 14, 2012) (finding $500 dollars per year a reasonable cost for bicycle repairs).

"show[ing] that it took active steps to ascertain the dictates of the FLSA and then act[ing] to comply with them." *Id.* (internal quotation marks and citation omitted). The Second Circuit has held that the employer's burden in demonstrating good faith is "a difficult one" and that liquidated damages should be the norm rather than the exception. *Id.* "Employer ignorance of the law is insufficient to establish good faith, and adherence to industry practice, when such practice violates the FLSA, is likewise insufficient." *Griffin v. Astro Moving & Storage Co. Inc.*, No. 11 Civ. 1844, 2015 WL 1476415, at *2 (E.D.N.Y. Mar. 31, 2015) (internal quotation marks and citation omitted).

The NYLL also provides for the recovery of liquidated damages for wages and gratuities owed. *See Inclan*, 95 F. Supp. 3d at 504 (citing N.Y. Lab. Law §§ 198(1-a), 663(1)). For damages awarded for violations after November 24, 2009, the NYLL entitles the employee to liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." *Id.* at 505 (internal quotation marks and citation omitted). An April 9, 2011 amendment to the NYLL "authorized liquidated damages amounting to 100% of the total unpaid wages for violations thereafter." *Hengjin Sun v. China 1221, Inc.*, No. 12 Civ. 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016). Courts treat the federal and state good-faith standards as analogous. *Inclan*, 95 F. Supp. 3d at 505.

However, a plaintiff suing under both the FLSA and NYLL cannot recover liquidated damages under both statutes for the same conduct. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct."). Plaintiffs, therefore, may seek liquidated damages under whichever statute provides the greater relief. *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) ("If a plaintiff is entitled to damages under both federal and

state wage law, the Court has discretion to award that plaintiff damages under the statute providing the greatest amount of relief.") (internal quotation marks, citation, and alteration omitted)). Liquidated damages are greater under the NYLL than FLSA because New York's minimum wage was higher than the federal minimum wage at all relevant points.

The Court concludes that Plaintiffs are entitled to liquidated damages. Defendants argue that any violations were "not willful" and "[D]efendants took reasonable measures to comply with the rules for employees" because "[t]here are payroll records and schedules which were used due to the situation that [D]efendants were in as a result of the status of the plaintiffs and their demand and requirement to be paid only in cash." Def. Post-Trial Mem. at 14–15. This is wholly insufficient to meet their burden to show by plain and substantial evidence that they acted with subjective good faith. As previously discussed, the "payroll records and schedules" submitted are handwritten, do not cover the entire time period in question, and do not clearly set out the rate of pay, or whether the records even pertain to Plaintiffs. Moreover, it is undisputed that Defendants did not provide "pay notices or wage statements" to Plaintiffs. *Id.* at 5. Finally, the Court rejected Patel's testimony that he informed Plaintiffs of their wages, including the tip credit. *See supra* section I.D. Accordingly, Defendants have not demonstrated that they had a good faith basis for believing that they were in compliance with the FLSA or NYLL. The Court, therefore, awards liquidated damages under the NYLL, equal to 100% of the minimum wages, overtime wages, and spread-of-hours pay owed. Specifically, the Court awards liquidated damages as follows:

- Feng Chen and Dong Chen: $13,086.08 each

- Cheng Li: $11,037.60

- Changxing Li: $11,985.22

### K. Prejudgment Interest

"Prejudgment interest may be awarded in addition to liquidated damages under NYLL." *Pineda v. Tokana Cafe Bar Restorant Inc.*, No. 16 Civ. 1155, 2017 WL 1194242, at *4 (S.D.N.Y. Mar. 30, 2017). However, "[a] NYLL plaintiff may recover prejudgment interest only on his actual damages under the NYLL, not his liquidated damages." *Gamero*, 272 F. Supp. 3d at 515 (internal quotation marks, citation, and alteration omitted). Nor is prejudgment interest available "for violations of the wage statement or wage notice provisions." *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).

New York's statutory prejudgment interest rate is nine percent. N.Y. C.P.L.R. § 5004. To determine when prejudgment interest begins to accrue, "[i]n wage and hour cases, courts often choose the midpoint of the plaintiff's employment within the limitations period." *Pineda*, 2017 WL 1194242, at *4.

With the exception of Changxing Li, all Plaintiffs were employed by Defendants from July 31, 2015 until January 20, 2016. The midpoint for those Plaintiffs is October 25, 2015. Changxing Li was employed from August 25, 2015 until January 20, 2016 and, therefore, the midpoint of his employment is November 6, 2015. Accordingly, prejudgment interest for Feng Chen, Dong Chen, and Cheng Li will accrue from October 25, 2015. Prejudgment interest for Changxing Li will accrue from November 6, 2015.

### L. Attorneys' Fees

As the prevailing party, Plaintiffs are entitled to reasonable attorneys' fees and costs under both the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663(1). Given that Plaintiffs' recovery is far smaller than they requested, the Court strongly encourages the parties to reach a mutual agreement on attorneys' fees and costs. In the event the parties

cannot reach a consensus, Plaintiffs shall file a motion for fees and costs by **August 20, 2019**.

By **September 3, 2019**, Defendants shall file their opposition papers. Plaintiffs may not file a reply brief.

Any request for attorneys' fees must be accompanied by supporting documentation. "In this circuit, a proper fee request 'entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.'" *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) (internal citation omitted).

### M. Defaulting Defendants

Plaintiffs also bring this action against Amgad Elhossieni, B. Wingers, Inc. d/b/a Best Wingers, and Best Wingers LLC d/b/a Best Wingers, collectively ("Defaulting Defendants") who have not appeared in this action. Compl. Defaulting Defendants owned the Restaurant prior to Defendants. *See* Trial Tr. 259:19–260:1. The Court has instructed Plaintiffs to move for a default judgment as to Defaulting Defendants for three years and granted Plaintiffs numerous extensions to do so. *See* ECF Nos. 18 (ordering Plaintiffs to initiate default judgment by July 25, 2016), 23 (extending time to move for default judgment until August 24, 2016), 68 (reminding Plaintiffs that they must follow the procedures set forth in Attachment A of the Court's Individual Practices), 112 (reminding Plaintiffs that they must follow the procedures set forth in Attachment A), 162 at 1 (repeated reminder). Despite numerous extensions, Plaintiffs failed to move for a default and their time to do so has expired.

"Whether to dismiss an action pursuant to [Federal Rule of Civil Procedure 41(b)] is within the discretion of the trial court." *McPhatter v. Cribb*, No. 94 Civ. 0406, 1997 WL 9776, at *1 (W.D.N.Y. Jan. 3, 1997). A dismissal for failure to prosecute may be ordered *sua sponte*.

28

*See LeSane v. Hall's Sec. Analyst, Inc*., 239 F.3d 206, 209 (2d Cir. 2001). Courts in this Circuit consider five factors: 1) the duration of plaintiff's failures or non-compliance; 2) whether plaintiff had notice that such conduct would result in dismissal; 3) whether prejudice to the defendant is likely to result; 4) whether the court balanced its interest in managing its docket against plaintiff's interest in receiving an opportunity to be heard; and 5) whether the court adequately considered the efficacy of a sanction less draconian than dismissal. *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp*., 222 F.3d 52, 63 (2d Cir. 2000). No one factor is dispositive. *Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009).

These factors weigh heavily towards dismissal in this case. First, Plaintiffs have failed to move for a default, and violated numerous court orders, for almost three years. Second, Plaintiffs received notice in 2016 that failure to timely move would "result in dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure." ECF No. 18. Third, having presided over this case for three years, "the court needs to avoid calendar congestion and ensure an orderly and expeditious disposition of cases." *Persaud v. Forest Recovery Servs., LLC*, No. 15 Civ. 5808, 2016 WL 8136611, at *2 (E.D.N.Y. Dec. 12, 2016) (internal quotation marks and citation omitted), *report and recommendation adopted*, (E.D.N.Y. Jan. 3, 2017). Fourth, Plaintiffs have had ample time to be heard over the past three years, including at a bench trial proceeding. In other words, Plaintiffs have "slept away many important years and can not now be heard to complain of prejudice." *In re Roth*, 172 B.R. 777, 781 (Bankr. S.D.N.Y. 1994). Moreover, in light of Plaintiffs' continued non-compliance, the Court does not believe a lesser sanction will be effective. In sum, all of these factors weigh in favor of dismissing this action for failure to prosecute as to Defaulting Defendants. *See Top Rank, Inc. v. Pollos A Las Brasa*, No. 01 Civ. 5890, 2004 WL 2039817, at *1 (E.D.N.Y. Sept. 7, 2004) (dismissing complaint for

failure to prosecute when the plaintiff twice failed to file a motion for default judgment by the date set by the Court); *Persaud*, 2016 WL 8136611 (recommending dismissing case that had been pending for over a year because the plaintiff failed to move for default). The Court, therefore, DISMISSES the action as to Defendants Amgad Elhossieni, B. Wingers, Inc. d/b/a Best Wingers, and Best Wingers LLC d/b/a Best Wingers.

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs have proven, by a preponderance of the evidence, the aforementioned violations of the FLSA and NYLL (Counts 1–4, 6–8) by Defendants Kunj Patel and East Wingers Inc. d/b/a Best Wingers. Count Five of the Amended Complaint is DISMISSED. Additionally, the claims against Defendants Amgad Elhossieni, B. Wingers, Inc. d/b/a Best Wingers, and Best Wingers LLC d/b/a Best Wingers are DISMISSED.

The Clerk of Court is directed to prepare a judgment reflecting the Court's holding and setting forth Plaintiffs' damages as follows:

- Feng Chen: $13,086.08 in unpaid wages under the NYLL, with 9% prejudgment interest beginning to accrue on October 25, 2015; $13,086.08 in liquidated damages; $400 under the FLSA for unpaid tools of the trade; $5,000 for Defendants' violation of NYLL § 195(1); and $5,000 for Defendants' violation of NYLL § 195(3);

- Cheng Li: $11,037.60 in unpaid wages under the NYLL, with 9% prejudgment interest beginning to accrue on October 25, 2015; $11,037.60 in liquidated damages; $600 under the FLSA for unpaid tools of the trade; $5,000 for Defendants' violation of NYLL § 195(1); and $5,000 for Defendants' violation of NYLL § 195(3);

- Dong Chen: $13,086.08 in unpaid wages under the NYLL, with 9% prejudgment interest beginning to accrue on October 25, 2015; $13,086.08 in liquidated damages; $400 under the FLSA for unpaid tools of the trade; $5,000 for Defendants' violation of NYLL § 195(1); and $5,000 for Defendants' violation of NYLL § 195(3); and

- Changxing Li: $11,985.22 in unpaid wages under the NYLL, with 9% prejudgment interest beginning to accrue on November 6, 2015; $11,985.22 in liquidated damages; $600 under the FLSA for unpaid tools of the trade; $5,000 for Defendants' violation of NYLL § 195(1); and $5,000 for Defendants' violation of NYLL § 195(3).

Accordingly, judgment is to be entered against Defendants Kunj Patel and East Wingers Inc. d/b/a Best Wingers as follows: $140,389.96, plus prejudgment interest as described above, as well as attorneys' fees and costs to be determined.

SO ORDERED.

Dated: July 2, 2019
New York, New York

_____
ANALISA TORRES
United States District Judge